IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ARJN #3, d/b/a JONATHAN'S GRILLE, et al.<br><br>  Plaintiffs,<br><br>v.<br><br>JOHN COOPER, et al.,<br><br>  Defendants. | NO. 3:20-cv-00808<br><br>JUDGE RICHARDSON |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion for Temporary Restraining Order (Doc. No. 6, "Motion"). Via the Motion, Plaintiffs seek to enjoin: (1) "Metro Defendants from enforcing Health Director Order 11, as amended, as it relates to the restrictions placed on Plaintiffs' businesses"; and (2) "Metro Defendants from continued pursuit of citations issued to Plaintiffs' businesses pursuant to the . . . health orders issued by Metro Defendants." (Doc. No. 6 at 2). Defendants filed a response in opposition, (Doc. No. 14), and Plaintiffs replied (Doc. No. 20). For the reasons set forth below, Plaintiffs' Motion is DENIED.

**I. Plaintiff's Request to Enjoin Enforcement of Order 11**

On March 15, 2020, the Nashville Davidson County Metropolitan Board of Health held a special public meeting and voted to issue a Declaration of Public Health Emergency related to the ongoing COVID-19 pandemic. *See Health Board Declaration: COVID-19 Public Health Emergency*, Metro. Gov. of Nashville and Davidson Cty. Board of Health, https://www.nashville.gov/Metro-Clerk/Legal-Resources/Emergency-Health-Orders/COVID19-Public-Health-Emergency-Declaration (last accessed Oct. 6, 2020). The declaration directed the

1

Chief Medical Director of Health, Dr. Michael Caldwell, to "act as necessary to maintain and protect the public health" in a manner consistent with the authority derived from state and local law and to limit the operation of businesses licensed to serve food or beverages. *Id*. Pursuant to that declaration, Dr. Caldwell issued a series of orders over the following months that placed restrictions on certain businesses, including businesses licensed to serve food or beverages, in an effort to limit the spread of COVID-19. *See generally Emergency Health Orders*, Metro. Gov. of Nashville and Davidson Cty., Tenn., https://www.nashville.gov/Metro-Clerk/Legal-Resources/Emergency-Health-Orders/COVID19-Public-Health-Emergency-Declaration (last accessed Oct. 6, 2020).

On August 16, 2020, Dr. Caldwell signed Order 11, which required Limited Service License holders (establishments that sell more alcohol than food) to operate at the lesser of 50% maximum capacity or 25 patrons on premises subject to distancing requirements. *See Health Director Order 11*, Metro. Gov. of Nashville and Davidson Cty. Tenn., https://www.asafenashville.org/wp-content/uploads/2020/08/Order-11-Phase-2-with-Modifications-FINAL-SIGNED-15-Aug.-20-1.pdf. (last accessed Oct. 6, 2020). Order 11 also required Full-Service Restaurants, like Plaintiffs', to operate at the lesser of 50% capacity or 100 patrons per floor subject to distancing requirements. (Doc. No. 15 at ¶ 42). Additionally, Order 11 required Full-Service Restaurants to comply with health safety requirements, such as requiring customers and guests to wear cloth face coverings or masks excepted when seated and eating or drinking, limiting dining parties to a maximum of six patrons, requiring daily screening of employees, prohibiting self-serve food and condiment stations, and prohibiting ancillary or participatory activities. (*Id*). On August 31, 2020, Dr. Caldwell issued Amended and Restated Order 11 (also known as "Order 11A"), which extended through September 30 the restrictions of Order 11, which

had been set to expire on September 1. (*Id*. at ¶ 45); *see Health Director Order 11A*, Metro. Gov. of Nashville and Davidson Cty. Tenn., https://www.nashville.gov/Metro-Clerk/Legal-Resources/Emergency-Health-Orders/Order-11a.aspx (last accessed Oct. 6, 2020).

On September 18, 2020, Plaintiffs filed their Motion for Temporary Restraining Order, wherein Plaintiffs sought to enjoin Defendants from enforcing Section 4 of Order 11A (the section that applies to businesses licensed to serve food or beverages), because, according to Plaintiffs, Order 11A is (1) "an unconstitutional deprivation of Plaintiffs' liberty" because Order 11A "contains no rational basis in preventing the spread of COVID-19"; and (2) Order 11A violates the "Equal Protection Clause of the Fourteenth Amendment because it treats Plaintiffs differently under the law with no rational basis" due to Order 11A's "discriminatory treatment of restaurants and bars." (Doc. No. 7 at 3-4).

Plaintiffs' Proposed Temporary Restraining Order attached to the Motion asks the Court to issue the following injunction:

> Defendants shall be restrained from enforcing Health Director Order 11, as amended, as it relates to the restrictions placed on Plaintiffs' businesses Jonathan's Grille – Providence, LLC d/b/a Jonathan's Grille and Jonathan's Grille – Green Hills, LLC d/b/a Jonathan's Grille, Mayor John Cooper's Reopening Plan, *and any Public Health Emergency Orders from Dr. Michael Caldwell or the Metro Board of Health*, and shall be allowed to operate at normal capacity without a curfew of 10:30PM or under any other restrictions set forth in such orders.

(Doc. No. 7-1 (emphasis added)). Although the proposed order references "any Public Health Emergency Orders," it is clear from Plaintiff's briefing that the relief sought via the Motion is injunctive relief as to Order 11A only (and not also other Metro health orders). *See* Doc. No. 7 at 2 ("Plaintiffs file this motion for temporary restraining order enjoining the Metro Defendants from enforcing Health Director Order 11[.]"); *id*. at 3 ("However, the purpose of this request for immediate injunctive relief, stems from the . . . unconstitutional mandates prescribed by Order

3

11."); *id*. at 4 ("Order 11 lacks any rational basis to the purported government interest of limiting the spread of COVID-19."); *id*. at 11 ("Defendants will not be able to prove that the severe restrictions placed on bars and restaurants by Order 11 have any rational basis to stopping the spread of COVID-19."). Neither Plaintiffs' Motion, Memorandum of Law, nor Reply reference any other Metro health order. Thus, the Court cannot construe Plaintiff's arguments as supporting relief as broad as that requested via Plaintiffs' Proposed Temporary Restraining Order—namely, a preliminary injunction against the enforcement of *any* Metro health order.

And this is significant, because on September 30, 2020, after Defendants responded (but prior to Plaintiffs' Reply wherein Plaintiffs continue to request the Court enjoin enforcement of "Health Director Order 11," (Doc. No. 20 at 11)), Dr. Caldwell signed Order 12, which states that it "*supersed[ed] and replac[ed]*" Order 11. *See Health Director Order 12*, Metro. Gov. of Nashville and Davidson Cty. Tenn., https://www.nashville.gov/Metro-Clerk/Legal-Resources/Emergency-Health-Orders/Order-12.aspx (last accessed Oct. 6, 2020) (emphasis added). Order 12 lifts some restrictions imposed on Full Service Restaurants by Order 11A; Order 12 allows bars and restaurants to stay open later, restaurants to resume bar-seated service, and extends the limit of patrons that may be seated at a table from 6 to 8. (*Id*.).

As Order 12 became effective on October 1, the Order Plaintiffs seek to enjoin enforcement of (Order 11A) is no longer in effect, having been superseded by Order 12. Consequently, Plaintiffs request for injunctive relief as to Order 11A is effectively moot. Plaintiffs' request for relief as to this aspect of the Motion therefore is hereby denied as moot. *See Libertarian Party of Ohio v. Husted*, 497 F. App'x 581, 583 (6th Cir. 2012) (reversing district court's grant of

4

preliminary injunction based on mootness, because "absent special circumstances not present in this case, the legislative repeal of a statute renders a case challenging that statute moot.").[1]

The Court realizes that the notion of mootness can implicate various technical legal issues, as well as potential exceptions. And the Court does not want to imply anything about the mootness of any of Plaintiffs' claims for permanent (*i.e.*, non-preliminary) relief, which is an issue outside the scope of the instant Motion.[2] So the Court notes that there is an alternative way of explaining, without reference to mootness *per se*, why the Motion in this respect must be denied. Because Order 11A is no longer in effect, the requested injunction (as to Order 11A) is not necessary to prevent the alleged harm on which the request for the preliminary injunction is grounded, *i.e.,* harm from Order 11A. That is to say, the Court cannot possibly find that Plaintiffs will suffer irreparable harm if the requested preliminary injunction is not granted. And a district court would abuse its discretion if it were to grant a preliminary injunction where, as here, it cannot and does not find that irreparable harm would result absent such grant. *D.T. v. Sumner Cty. Schools*, 942 F.3d 324, 327 (6th Cir. 2019).

---

[1] As to what such special circumstances might be, the Seventh Circuit has noted, "'[o]nly in cases where there is evidence that the repeal was not genuine has the [Supreme] Court refused to hold the case moot.'" *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (quoting *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003)), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020)). In *Speech First, Inc.,* the Seventh Circuit indicated that the Sixth Circuit's view (consistent with the Supreme Court's view) is that "'[w]here regulatory changes are effected through formal, legislative-like procedures, . . . to moot the case the government need not do much more than simply represent that it would not return to the challenged policies.'" *Id.* at 646-47 (quoting *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019)).

[2] The Court notes that it appears that it is not just claims as a whole, but also discrete requests for preliminary injunctions premised on underlying claims, that can be rendered moot by the repeal of the challenged rule. *See Speech First, Inc.* 326 F.3d at 645-47 (holding that public university's repeal of particular student-code rule rendered moot plaintiff's request for preliminary injunction enjoining rule as violating First Amendment).

**II. Plaintiffs' Request to Enjoin Defendants From Prosecuting the Citations and Civil Warrant Issued to Plaintiffs**

Plaintiffs additionally request via the Motion that the Court enjoin Defendants "from continued pursuit of the two citations and one civil warrant issued to Plaintiffs' businesses pursuant to the . . . health orders issued by Defendants." (Doc. No. 7 at 13). On June 12, 2020, two Metro Citations were issued by the Department of Health to Plaintiffs. (Doc. Nos. 14-1, 14-2). The matters were tried in General Sessions Court in Davidson County and then appealed to Davidson County Circuit Court. (*Id.*). On July 31, 2020, a civil warrant was issued to Plaintiffs to appear before the General Sessions Environmental Court for Nashville, Davidson County, Tennessee. (Doc. No. 14-3). Thereafter, the case was transferred to Davidson County Circuit Court, as it was related to the appeals of the judgments involving the two pending citations. (*Id.*). Plaintiffs currently have a motion to consolidate and a motion to set for trial pending in the matters in Davidson County Circuit Court. (Doc. Nos. 14-4, 14-5).

In light of the above-described litigation, Defendants argued in their Response that this Court should abstain from exercising jurisdiction over Plaintiffs' request to enjoin the above-described proceedings pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). As the undersigned recently explained in a similar case:

> Th[e] [*Younger*] holding flowed from the general principle that courts of equity should refrain from enjoining a criminal prosecution when the federal plaintiff "'has an adequate remedy at law and will not suffer irreparabl[e] injury if denied equitable relief.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting Younger, 401 U.S. at 43–44)). Such equitable restraint prevents courts from encroaching on the role of the jury, avoids duplicative judicial proceedings and sanctions, and demonstrates a "respect for state functions" that is appropriate in our federal system of government. *Id*. (quoting *Younger*, 401 U.S. at 44); *see also Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. Mar. 20, 2019) (explaining that the two main sources of the abstention doctrine are "the constraints of equity jurisdiction and the concern for comity in our federal system" (quoting *Gilbertson v. Albright*, 381 F.3d 965, 970 (9th Cir. 2004))).

> *Younger* abstention has now extended substantially beyond its original context to bar relief in certain civil actions. *Sprint Commc'ns*, 571 U.S. at 77. In addition to state criminal prosecutions, the Supreme Court has identified two additional categories of state proceedings that trigger *Younger* concerns: (1) "particular state civil proceedings that are akin to criminal prosecutions[;]" and (2) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns*, 571 U.S. at 72-73 (citations omitted); *Xcaliber Int'l, Ltd. v. Gerregano*, 290 F. Supp. 3d 747, 752 (M.D. Tenn. 2018). In addition, the Supreme Court recently clarified—and narrowed—what sort of administrative actions are "akin to a criminal prosecution." *Sprint Commc'ns*, 571 U.S. at 79 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). The Court explained the following:
>
>> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. *See, e.g., Middlesex*, 457 U.S. at 433–434, . . . (state-initiated disciplinary proceedings against lawyer for violation of state ethics rules). In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619 . . . (1986) (state-initiated administrative proceedings to enforce state civil rights laws); . . . . Investigations are commonly involved, often culminating in the filing of a formal complaint or charges. *See, e.g., Dayton*, 477 U.S., at 624, . . . (noting preliminary investigation and complaint); *Middlesex*, 457 U.S. at 433, . . . (same).
>
> *Sprint Commc'ns*, 571 U.S. at 79-80. Once the Court has determined that a case falls into one of these three categories, the Court must "analyze the case 'using a three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982).'" *Aaron v. O'Connor*, 914 F.3d 1010, 1018 (6th Cir. 2019) (quoting *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017)) ("Middlesex Factors"). Under that test, abstention is appropriate if: "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims . . . ." *Id.* (quoting *Doe*, 860 F.3d at 369).

*Local Spot v. Metro. Gov't of Nashville & Davidson Cty*., No. 3:20-cv-00421, 2020 WL 3972747, at *2 (M.D. Tenn. July 14, 2020). In *Local Spot*, the undersigned determined that the *Younger* abstention doctrine applied when the plaintiffs asked the Court to enjoin the Metro defendants from continuing to prosecute three citations currently pending against the plaintiffs: (1) two citations issued by the Health Department on June 12, 2020, which were scheduled for a hearing

7

before the Davidson County Environmental Court, and (2) one citation issued by the Metropolitan Nashville-Davidson County Beer Permit Board, for which no hearing date had been set.

The Court adheres to that same rationale in this case. The underlying state cases, which are akin to criminal proceedings, are being actively litigated in state court. Plaintiffs may raise the constitutional issues they raise here in those proceedings. In their Reply, Plaintiffs argue that *Younger* abstention does not apply here because the second *Middlesex* factor is not met. Specifically, Plaintiffs argue

> The second criteria regarding the proceedings involving an important state interest is not met. While protecting individuals and the community during times of a public health crisis is an important state interest, for reasons discussed in detail, *inter alia*, Plaintiffs have shown the harm from which Defendants seek to protect the public no longer existss [sic].

(Doc. No. 20 at 11). The Court disagrees that Plaintiffs have shown that the harm from which Defendants seek to protect the public (*i.e.*, COVID-19) no longer exists. Plaintiffs point may be that a risk no longer exists because, according to Plaintiffs, Metro's data reveals that a small percentage (less than 1%) of cases in Davidson County have been traced to restaurants.[3] However, the Court recognizes that cases traced to restaurants remained at this low rate while under restrictions from various Metro health orders, thus raising the possibility that the harm (the risk of COVID-19 spreading in restaurants) very much still exists but has been mitigated by Metro's health orders (including the very one Plaintiffs asked the Court to enjoin enforcement of).[4] Further,

---

[3] Further, the Court is not able to locate the data Plaintiffs cite from the citation provided—*i.e.*, "https://asafenashville.org/updates." (Doc. No. 20 at 2).

[4] To be clear, the Court does not purport to know the extent to which particular public health measures anywhere (including in Davidson County), have mitigated the risk of COVID-19 infection; at this point, this would seem hard for the world's foremost experts to know with certainty. But what the Court can say is that: (1) it is quite plausible, based on what the Court perceives as a generally shared consensus among informed professionals about COVID-19 countermeasures (of which the Court can and does take notice here), that Metro's health orders have helped diminish the risk; and (2) it is logically flawed to argue that a recently diminished risk necessarily shows the absence of a need for restrictions, when the restrictions themselves may be partially or wholly responsible, for the diminishment in the risk.

8

Case 3:20-cv-00808 Document 24 Filed 10/07/20 Page 8 of 10 PageID #: 221

while the COVID-19 infection rate appears to be declining, there is still currently over 1,000 active cases of COVID-19 in Davidson County. *See Metro's COVID-19 Dashboard*, https://nashville.maps.arcgis.com/apps/MapSeries/index.html?appid=30dd8aa876164e05 ad6c0a1726fc77a4 (last accessed Oct. 6, 2020).

The Sixth Circuit has found important state interests in a myriad of contexts: maintaining and assuring the professional conduct of attorneys, *American Family Prepaid Legal Corp. v. Columbus Bar Association*, 498 F.3d 328, 334 (6th Cir. 2007) governing state and local housing codes, *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998), and zoning laws, *Nimer v. Litchfield Township Board of Trustees*, 707 F.3d 699, 701 (6th Cir. 2013); divorce laws, *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995); governing the health and safety of its workers, *Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 640 (6th Cir. 1990); and many others. *See Xcaliber Int'l, Ltd., LLC v. Gerregano*, 290 F. Supp. 3d 747, 753–54 (M.D. Tenn. 2018) (collecting cases). The Court has no reservations finding that protecting the health and safety of its citizens by efforts preventing the spread of a virus that caused a pandemic is an important state interest.[5] Furthermore, Metro has an important interest in enforcing its own regulations. *See Goodwin v. Cty. of Summit, Ohio*, 45 F. Supp. 3d 692, 700 (N.D. Ohio 2014) (explaining that governments have an important interest in the "enforcement of local or municipal ordinances relating to health, safety, and welfare of its citizens."). Accordingly, the Court declines to exercise jurisdiction in this case, based on the abstention doctrine in *Younger*.

"A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *Eidson v. State of Tennessee Dep't of*

---

[5] Again, the Court does not claim to be qualified at present to comment on the effectiveness of Metro's attempts via its health orders to prevent that spread of COVID-19. But the Court can say that Metro has an important interest in making that attempt, and that matters a great deal in the current context, even without data or analysis purporting to show the degree of success of those efforts.

*Children's Servs.*, 510 F.3d 631, 638 (6th Cir. 2007). The Court will stay this litigation, under the *Younger* abstention doctrine, as to any aspect of the claims related to the issuance and prosecution of the citations and civil warrant, subject to any party's prerogative to move to lift the stay on the ground that court proceedings have been finally concluded with respect to the two citations and the civil warrant.

## CONCLUSION

For the above-mentioned reasons, Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 6) is DENIED.[6]

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[6] Nothing herein is intended to express any view about any aspect of this case beyond the instant Motion.